ROBERT E. WARD, JR. v. ROBERT G. ZABADY

No. 8610SC724

(Filed 7 April 1987)

1. **Contracts § 27.2— sufficiency of evidence of breach**

Evidence was sufficient to show that defendant breached his contract with plaintiff where the contract provided that defendant would set up a holding company in Luxembourg, execute an employment contract with the holding company, provide plaintiff with information on the corporation's activities, and provide plaintiff with a bimonthly list of expenses, but defendant in his stipulations and testimony admitted that he failed to perform these duties.

2. **Contracts § 29.4— breach of contract—damages—investment in corporation—setoff**

In a breach of contract action where plaintiff claimed as damages $75,000 which he had invested in a corporation, the trial court erred in awarding him the full $75,000 and in failing to deduct $7,500 which plaintiff received in an arrangement with a third person to buy his shares of the corporation, since plaintiff was entitled to recover only the amount of his actual damages.

3. **Unfair Competition § 1— breach of contract—no unfair trade practices**

A contract whereby plaintiff invested $75,000 and was to receive in exchange stock in a company to be formed by defendant was not within the scope of N.C.G.S. Chapter 75, and the trial court therefore did not err in dismissing plaintiff's unfair trade practices claim.

Ward v. Zabady

APPEAL by defendant from *Hight, Judge.* Judgment entered 20 February 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 11 December 1986.

Plaintiff and defendant organized a North Carolina corporation entitled International Infrastructure Development Corporation (IIDC). After it was formed, they entered into a personal contract to form a Luxembourg corporation, entitled International Infrastructure Development Holding Corporation (IIDHC). IIDHC was to own all of the stock of the North Carolina corporation and was also to act as a contact corporation for lining up construction projects throughout the world.

Defendant was responsible for organizing the holding company in Luxembourg, while plaintiff provided the initial cash investment of $75,000 to get the company started. In return for his investment, plaintiff was to receive 60,000 shares of the holding company's stock. There is no evidence that any other money was ever paid into the corporation, by defendant or anyone else.

The personal contract between plaintiff and defendant required defendant to execute an employment contract with the holding company. The provisions of the employment contract were to state that defendant would receive no salary from the company until plaintiff recovered his cash investments, but that defendant was to be reimbursed for reasonable expenses in connection with his employment. Under his employment contract, defendant was also required to furnish the corporation and its shareholders a statement of his expenses every two months and to keep them informed of the corporation's progress at reasonable intervals.

Defendant never formed a holding company in Luxembourg, but instead formed a corporation, not a holding company, in the Cayman Islands. Defendant never executed an employment contract with the corporation and failed to provide plaintiff with information concerning the corporation's progress or with an accounting of his expenses. The corporation never made any contracts or produced any income, so that it eventually failed.

In order to recover his investment, plaintiff agreed to sell his stock in the Cayman Island corporation to Ronald Barillo for $75,000. Plaintiff received $7,500 down and agreed to accept the

balance in ninety days. Barillo, however, never paid him the balance.

Plaintiff filed suit against defendant alleging that defendant breached their personal contract and claiming damages in the amount of $75,000, plus interest. Plaintiff also claimed treble damages under N.C.G.S. Chapter 75, the Unfair Trade Practices Act. Defendant counterclaimed and alleged that plaintiff breached the contract by failing to line up construction companies to perform in the Middle East, and that as a result he was damaged in the amount of $55,000.

Plaintiff made a motion for summary judgment on his claims against the defendant and on defendant's counterclaim. The court granted summary judgment to plaintiff only on defendant's counterclaim.

At trial, the court found that defendant had breached his contract with plaintiff and that plaintiff was entitled to a recovery of $75,000.

From the judgment entered for plaintiff, defendant appeals. From the court's granting defendant's motion to dismiss plaintiff's unfair trade practices claim, plaintiff appeals.

*David R. Cockman, attorney for plaintiff appellee.*

*DeBank, McDaniel, Heidgerd, Holbrook & Anderson, by L. Bruce McDaniel, attorney for defendant appellant.*

ORR, Judge.

## I.

[1]  Defendant argues that the trial court erred in entering judgment for plaintiff, because there was insufficient evidence that he breached the contract. We disagree.

In ruling that defendant had breached his contract with plaintiff, the trial court, sitting as judge and jury, made the following relevant findings of fact:

> 9. That the defendant without legal excuse and unjustifiedly [sic] failed to provide for the organization of the holding company.

11. That if such a Cayman Island corporation was formed by the defendant, such corporation formation did not fulfill the requirement in paragraph numbered 14 of the "Contract" that Zabady provide for the organization of the holding company.

13. That no employment contract with IIDHC was executed by the defendant.

14. That no employment contract with any identified corporation was executed by the defendant.

17. That the defendant without legal excuse and unjustifiedly [sic] failed to keep Ward informed of the corporation's progress at reasonable intervals.

18. That the defendant unjustifiedly [sic] failed to provide a statement of expenses to Ward or any interested parties (shareholders) at any time.

"When a jury trial is waived, the court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary. . . . Findings of fact made by the court which resolve conflicts in the evidence are binding on appellate courts." *Lane v. Honeycutt*, 14 N.C. App. 436, 438, 188 S.E. 2d 604, 605, *cert. denied*, 281 N.C. 622, 190 S.E. 2d 466 (1972).

As to the formation of a Luxembourg holding company, defendant admitted in his deposition and stipulated in the Order on Final Pretrial Conference that he did not set up a holding company in Luxembourg as required in the contract. "[S]tipulations by the parties have the same effect as a jury finding; the jury is not required to find the existence of such facts; and nothing else appearing, they are conclusive and binding upon the parties and the trial judge." *Crowder v. Jenkins*, 11 N.C. App. 57, 63, 180 S.E. 2d 482, 486 (1971).

Defendant argues that he substantially performed this provision of the contract by forming a corporation in the Cayman Islands. The Cayman Island corporation, however, was not a holding company as required by his contract with plaintiff. Furthermore, the Cayman Island corporation never fulfilled any of the

objectives proposed in the contract for the holding company. It never made any contracts to do business with other companies and it never produced any income. If any records were kept concerning the corporation's dealings and its attempts to generate business, defendant could not produce them.

Defendant testified that he never executed an employment contract either with the holding company or with any other corporation. Yet, defendant denies breaching this provision of the contract, since no one ever presented him with a contract to sign or asked him to prepare one. The contract between plaintiff and defendant, however, states that "Zabady agrees to execute an employment contract with IIDHC. . . ." This provision indicates that defendant was to execute the contract on his own initiative. When defendant failed to do so, he breached that provision of the contract.

Defendant also stipulated in the Order on Final Pretrial Conference, that he failed to provide plaintiff information on the corporation's activities and that he never furnished the corporation or its shareholders with a bimonthly statement of expenses. The evidence shows that by letter dated 11 April 1978, plaintiff requested that defendant furnish him with information concerning the corporation's progress. Defendant admitted in his deposition that he never responded to this request.

Plaintiff also requested a list of expenses incurred by defendant in connection with corporation business as early as December, 1977. Defendant admitted in his deposition that he failed to respond to this request and that he failed to furnish a list of expenses to the corporation every two months. Defendant's deposition reveals that after he received plaintiff's money, he had virtually no contact with plaintiff or anyone else concerning the corporation's progress or what expenses he incurred.

Based on the above facts, we hold that there was sufficient evidence to support the trial court's findings that defendant breached his contract with plaintiff.

## II.

[2]  The trial court found "[t]hat as a result of the defendant's failure to perform his duties under the 'Contract,' the plaintiff has suffered an actual loss of $75,000.00, such amount being his cash

contribution pursuant to the 'Contract.'" Defendant argues that the trial court erred in awarding plaintiff his full $75,000 investment. We agree.

The measure of damages for a breach of contract is the amount which will compensate the injured party for his loss and which will put the plaintiff in as good a position as if the contract had been performed. *Service Co. v. Sales Co.*, 259 N.C. 400, 415, 131 S.E. 2d 9, 21 (1963). To recover compensatory damages in a contract case, plaintiff must show that the damages claimed were the natural and probable result of the acts complained of, and must also show the amount of loss with reasonable certainty. Such damages may not be based on mere speculation or conjecture. *Pike v. Trust Co.*, 274 N.C. 1, 17-18, 161 S.E. 2d 453, 466 (1968).

The evidence shows that plaintiff paid into the North Carolina corporation the sum of $75,000 pursuant to his agreement with defendant. Defendant was to use plaintiff's money to get the business started and to pay for defendant's reasonable business expenses. The evidence shows that defendant used the funds contributed by plaintiff for expenses which were unreasonable under the terms of their contract and for personal expenses, such as purchasing a Cadillac automobile and shipping it from the United States to Europe, where he was allegedly doing business.

Defendant also hired a young woman to serve as the corporation's secretary, although defendant could not recall if she had even typed any letters for him while she was employed by the corporation. Defendant also used corporate funds to pay for his trips not taken for the benefit of the corporation.

When plaintiff learned of defendant's misuse of the corporate funds, he entered into a buy-out agreement with Ronald Barillo in order to recover his cash investment. Barillo agreed to buy all of plaintiff's stock for $75,000, and paid plaintiff $7,500 down at the time the agreement was made. Barillo agreed to pay the balance in ninety days, but never did. However, since Barillo did pay the initial $7,500, plaintiff is entitled to recover only $67,500 from defendant. A plaintiff can only recover his actual losses in a breach of contract case. *See Norwood v. Carter*, 242 N.C. 152, 87 S.E. 2d 2 (1955).

Plaintiff is also entitled to recover interest from 1 October 1977 as granted by the trial court. In a breach of contract case, interest on the amount of damages may be allowed from the date of the breach, *Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 127, 123 S.E. 2d 590, 602 (1962), when the amount of damages is ascertained from the contract itself or from relevant evidence, or from both. *General Metals v. Manufacturing Co.*, 259 N.C. 709, 713, 131 S.E. 2d 360, 363 (1963).

### III.

Defendant argues that the trial court erred in granting plaintiff's motion for summary judgment which dismissed defendant's counterclaim. We disagree.

Defendant's counterclaim alleged that plaintiff breached the personal contract by failing to arrange for American construction companies to perform certain construction services and that this failure caused him to lose his investment of $55,000.

At trial, defendant could not prove that he had invested $55,000 in the stock of the corporation or that he had personally paid for any corporate expenditures. Furthermore, when questioned about the counterclaim during his deposition, defendant even stated, "I guess I can't prove that claim."

Therefore, we hold that the trial court appropriately granted plaintiff's motion for summary judgment on defendant's counterclaim.

### IV.

[3] Plaintiff argues that the trial court erred in dismissing his claim under Chapter 75. We disagree.

N.C.G.S. Chapter 75, the Unfair Trade Practices Act, encompasses only consumer and commercial practices. This matter involved a contract whereby plaintiff invested $75,000 and was to receive in exchange stock in a company to be formed by defendant. We hold that such a transaction is not within the scope of Chapter 75.

Our Supreme Court has given a very narrow interpretation to Chapter 75 and has held that other federal or state statutes may limit its scope. *See Buie v. Daniel International,* 56 N.C. App.

445, 289 S.E. 2d 118, *disc. rev. denied,* 305 N.C. 759, 292 S.E. 2d 574 (1982). Furthermore, the regulation of securities in North Carolina is already governed by the North Carolina Securities Act, N.C.G.S. § 78A-1. If Chapter 75 also applied to securities, it would subject those involved with securities transactions to overlapping supervision. *See Lindner v. Durham Hosiery Mills, Inc.,* 761 F. 2d 162 (4th Cir. 1985). Therefore, we hold that the trial court properly dismissed plaintiff's unfair trade practices claim.

V.

Plaintiff also argues that the trial court erred in not admitting evidence on prior federal indictments against defendant and Barillo. We disagree.

Evidence of the indictments was irrelevant and immaterial to the case *sub judice,* and therefore, was inadmissible under Rule 402 of the North Carolina Rules of Evidence. *See State v. Price,* 313 N.C. 297, 327 S.E. 2d 863 (1985).

Having reviewed the record in this case, we hold that there was sufficient evidence to support the trial court's findings that defendant breached his contract with plaintiff. Furthermore, there is no evidence that plaintiff breached the contract in any way. Therefore, the trial court's conclusion that defendant breached this contract is affirmed.

The damages awarded by the trial court, however, should be reduced by $7,500 to reflect that amount already received by plaintiff from Barillo. That issue alone is reversed and remanded to the trial court for entry of judgment in accordance with this opinion.

Affirmed in part and reversed in part.

Judges ARNOLD and PHILLIPS concur.