## BLACKWELL v. CITY OF REIDSVILLE

[129 N.C. App. 759 (1998)]

ALLEN R. BLACKWELL AND WIFE VIRGINIA G. BLACKWELL, CHERYL BUNTON AND HUSBAND STEPHEN BUNTON, CHARLES A. DAVIS, HENRY C. DURHAM AND WIFE EVELYN C. DURHAM, GERALDINE F. EVANS, OLLIE FRENCH AND HUSBAND JERRY FRENCH, TIMOTHY N. GOODMAN AND WIFE LISA F. GOODMAN, CHARLENE E. HAWKS, PAUL B. JONES, WILLIE RAY LAW AND WIFE FRANCES E. LAW, WALTER MIMS AND WIFE MINNIE MIMS, HENRY CALVIN PETTIGREW AND WIFE OLLIE MAE PETTIGREW, JULIANNE MARIE ROSS, CHARLES RICHARD SETLIFF, GEORGE M. SOYARS AND WIFE NANNIE S. SOYARS, ERNEST STRADER AND WIFE EDNA STRADER, ELBERT M. SUTHARD, JR., TANK LAND, INC., CLARENCE E. TUCKER AND WIFE IDA W. TUCKER, ANN RUSSELL BOONE, ANNE S. COX, EARL MAX GUNN AND WIFE VIRGINIA H. GUNN, LENOX CASTLE FARMS, VERNON LINK AND WIFE LINDA LINK, ROBERT L. LONDON AND WIFE OLENE H. LONDON, R. NEAL PEGRAM AND WIFE MARY A. PEGRAM, JUNIOR PRUITT AND WIFE ANN F. PRUITT, TERRY E. PRUITT, THOMAS P. SHARPE AND WIFE DOBIE P. SHARPE, RUSSELL T. SHELTON AND WIFE ELSIE M. SHELTON, HOUSTON W. STANFIELD, JR. AND WIFE BARBARA A. STANFIELD, JAMES R. STANFIELD AND WIFE DEE B. STANFIELD, GENE L. WARREN AND WIFE ANNE CLAIRE WARREN, WILLIAM JARRELL YOUNG, DONALD KEITH BROWN, JOHN F. EVANS, SR. AND WIFE SYLVIA M. EVANS, THELMA A. EVANS, WILLIAM JAMES HASH, LILLIE S. BOSWELL, CHARLES F. DAVIS, SR., AUDRIE H. DAVID, DOUGLAS THOMAS DOSS AND WIFE CHRISTINE L. DOSS, EUGENE S. EANES AND WIFE WILMA EANES, RHONDA H. EASTER, CARL W. FARGIS AND WIFE LINDA S. FARGIS, EARLENE G. GILLEY, WILLIAM J. HARMON AND WIFE THERESA M. HARMON, MARY HATCHER, OSCAR B. MADISON AND WIFE BILLIE B. MADISON, ERWIN DEAN McKEE, NEAL H. McKEE AND WIFE ILA S. McKEE, CHARLES S. MOORE AND WIFE PAULETTE C. MOORE, LARRY GRAY PATTERSON AND WIFE SHIRLEY PATTERSON, PHILIP R. ROBERTS, RONALD KEITH SHREVE, LARRY Y. SMITH AND WIFE GAYLE R. SMITH, LESTER L. WHITE AND WIFE HELEN C. WHITE, DALE BARHAM, ROYCE BARHAM, BROWN AND SON CONSTRUCTION, BROWN BROTHERS MACHINE SHOP, JONATHAN D. BROWN, H.P. BROWN, II, DAVID W. BROWN, ROBERT M. BROWN, PAUL D. CARTER, CORA L. CHANEY, DWIGHT L. CHANEY AND WIFE LINDA S. CHANEY, EUGENE W. COX AND WIFE EVA D. COX, LARRY DUNLAP AND WIFE LISA M. DUNLAP, CECIL F. EASTER AND WIFE DELCIE EASTER, EUGENE FUQUA AND WIFE DOROTHY FUQUA, FLOYD GIBSON AND WIFE BETTY M. GIBSON, STERLING GUNN AND WIFE EDITH GUNN, DAVID JAMES HALBROOK AND WIFE ANGELA CARTER HALBROOK, LARRY HALBROOK AND WIFE LINDA HALBROOK, WAYNE HALL, JESSE F. HASKINS AND WIFE LOUISE C. HASKINS, CLYDE MICHAEL HAYNES, CAROLYN HEARP AND HUSBAND ALFRED HEARP, JR., BOBBY HILL AND WIFE SHIRLEY G. HILL, ETHEL HUDSON, IRVIN FARM, ANNE M. HARDINGHAM, SAM L. FAIRCHILD, ROSE T. McMICHAEL, STEVE E. SMITH, GLENN EDWARD JOHNSON AND WIFE CAROL ALBAN JOHNSON, JOHN W. MANLEY, EXCELL MUMFORD AND WIFE JOSEPHINE MUMFORD, JAMES LEE MOORE, ROBERT E. MURRAY, CARROLL W. MUSICK AND WIFE JOAN MUSICK, JAMES M. ROBERTS AND WIFE NELLIE H. ROBERTS, JESSIE JAMES ROBERTS AND WIFE MODEAN H. ROBERTS, SAMUEL H. ROBERTSON AND WIFE SHARON Y. ROBERTSON, WILLIE SAM PETTY AND WIFE LOLA J. PETTY, JESSE B. PYRTLE, JAMES L. SLAYDON AND WIFE LOULA MAE SLAYDON, RICHARD FRANKLIN SMITH AND WIFE PELHAM CURLEE SMITH, RICHARD R. SMITH AND WIFE IRMA C. SMITH, DAVID M. SOYARS AND WIFE SHIRLEY T. SOYARS, TANK LAND, INC., D. WAYNE TERRELL AND WIFE BRENDA TERRELL, CHARLES E. THOMAS AND WIFE ANNELLA B. THOMAS, WILLIAM H.

TRENT, JR. AND WIFE LINDA B. TRENT, JAMES THOMAS TUCKER AND WIFE DEBORAH TALLEY TUCKER, FANNIE WADDELL, JOHNNIE W. YORK AND WIFE DORIS J. YORK, BERTIE M. DALE, BOBBY MARTIN AND WIFE FRANCES MARTIN, FRANKIE P. MOORE AND WIFE VIRGINIA E. MOORE, JAMES D. REEVES AND WIFE EMMA R. REEVES, SHERRILL WHITLEY AND WIFE CAROL WHITLEY, WHIT NEILSON WHITLEY AND WIFE CYNTHIA U. WHITLEY, PETITIONERS v. CITY OF REIDSVILLE, A NORTH CAROLINA MUNICIPAL CORPORATION, RESPONDENT

No. COA97-984·

(Filed 16 June 1998)

### 1. Municipal Corporations § 82 (NCI4th)— annexation—tax identification numbers—insufficient metes and bounds property descriptions

Property descriptions in annexation ordinances were not metes and bounds descriptions as required by N.C.G.S. § 160A-49(e)(1), and the ordinances were invalid, where the descriptions did not include courses and distances but referred to "lots" by twelve digit parcel identification numbers given to the "lots" by the county tax administrator, and there is nothing in the descriptions or maps in the ordinances that identifies these numbers in any way. The use of tax maps, without incorporation by reference, was not a sufficient metes and bounds description.

### 2. Municipal Corporations § 80 (NCI4th)— annexation— boundaries—use of setbacks

The trial court did not err by finding that a city used topographical features wherever practical for the boundaries of annexation areas in substantial compliance with N.C.G.S. § 160A-48(e), although 200-foot setbacks were consistently used, where the· City's planning director testified that the city first examined the areas for natural topographic features, and in the absence of those features the city used the setbacks.

Appeal by petitioners from judgment entered 4 March 1997 by Judge Sanford L. Steelman, Jr. in Rockingham County Superior Court. Heard in the Court of Appeals 31 March 1998.

On 1 August 1996, the City of Reidsville ("the City") adopted six ordinances in an effort to annex six separate areas into the corporate limits of the city. The areas to be annexed are referred to here as Areas 1, 9, 10, 11, 12 and 13. The petitioners challenged the validity of these ordinances. Petitioners contend that the ordinances were

invalid because (1) the City's method of counting small portions of large parcels of real property in the annexation area and excluding the remainder does not properly reflect urbanization under the "subdivision test" of G.S. 160A-48(c); (2) the City's consistent use of 200 foot setbacks as boundaries was impermissible; and (3) the descriptions of the six annexation areas in the ordinances failed to comply with the requirement that the boundaries of the area to be annexed be described with metes and bounds.

On 29 August 1995, petitioners filed their petition for review in Superior Court pursuant to G.S. 160A-50. A hearing was held without a jury before Judge Sanford L. Steelman, Jr. on 3 February 1997. On 4 March 1997 a judgment affirming the annexation of Areas 1, 10, 11 and 13 was entered. The annexation of Area 9 was remanded for amendment of the boundaries. The annexation of Area 12 was held void because the City had failed to properly adopt an annexation ordinance for Area 12.

The trial court held that the City was permitted to divide tracts and that it was permissible to count only the portion of the tracts included within the proposed annexation when determining whether the City met the urbanization requirements of G.S. 160A-48(c). The court further found that the City's splitting of tracts "did not rise to being a subterfuge or a gerrymander as having no possible purpose but to attempt to meet the numerical requirements of G.S. 160A-48." The trial court also found that the use of two hundred foot setbacks was permissible because the City had used natural topographic features where practical and where the "use did not have an adverse effect upon qualification or services." The trial court also opined that the provisions of G.S. 160A-48(e) with regard to natural boundaries are not mandatory. Finally, the trial court determined that although the descriptions did not contain courses and distances, they did constitute a metes and bounds description because each description contained definite beginning and end points, and made sufficient references to property lines and roadways to constitute a definite description of each annexation area. Petitioners appeal.

*Adams Hendon Carson Crow & Saenger, P.A., by S. J. Crow and Martin K. Reidinger, for petitioner-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Roddey M. Ligon, Jr., for respondent-appellee.*

*Reidsville City Attorney J. Michael Thomas, for respondent-appellee.*

EAGLES, Chief Judge.

[1] We first consider whether the property descriptions in the annexation ordinances are metes and bounds descriptions where the property descriptions do not include courses and distances but make reference to "lots" that are not identified in the property descriptions.

Petitioners argue that the annexation statute expressly requires that in the annexation ordinance "[t]he external boundaries of the area to be annexed shall be described by metes and bounds." G.S. 160A-49(e)(1). Petitioners first contend that the descriptions of the six annexation areas fail to comply with this requirement because the descriptions do not include courses and distances. Second, petitioners argue that the descriptions are inadequate because the boundaries can only be determined by reference to "lots" that are not identified in the description. Specifically, the petitioners contend that the property descriptions in the ordinance refer to "lots" but the property descriptions make no explanation of what the "lots" are or how they can be found. The "lots" in the ordinance are referred to by twelve digit parcel identification numbers given to the "lots" by the Rockingham County Tax Administrator, but there is nothing in the descriptions or maps in the ordinance that identify these numbers in any way. Accordingly, petitioners argue that there is no way of identifying what the lots are "unless one just happens to know that the lot numbers in the ordinances refer to map numbers and the tables on the maps refer to tax parcel numbers." The tax maps were recorded simultaneously with the ordinance, but were not incorporated by reference. Petitioners additionally argue that the description is inadequate because the tax lot numbers for "lots" periodically change, and after the tax lot numbers change, there will be no way to ascertain the boundaries of the annexed areas. Accordingly, petitioners argue that the descriptions in the ordinance are inadequate and the judgment of the trial court should be reversed.

The City argues that although the descriptions do not contain courses and distances for each segment of the external boundary of the annexation area, they do contain a definite beginning and ending point, and make sufficient reference to property lines and roadways to constitute a definite description of each area. Accordingly, the City argues that the trial court's decision should be affirmed.

After careful consideration of the record, briefs and contentions of the parties, we reverse. The trial court found that the descriptions contained definite beginning and ending points, and made sufficient

references to property lines and roadways to constitute a definite description. However, we find petitioners' arguments persuasive and conclude that the use of the tax maps, without incorporation by reference, was not a sufficient metes and bounds description. Accordingly, the trial court is reversed and the matter is remanded for entry of judgment that none of these annexation areas qualify to be annexed and that these annexation ordinances are void.

We next consider whether portions of tracts included in annexation areas should properly be counted as separate small lots for the purposes of the "subdivision test" of G.S. 160A-48(c)(3). Petitioners argue that the annexation of Areas 1 and 10 did not meet the standards of the "subdivision test" because the City chose to place the boundary of the annexation areas such that a small portion of a large parcel of property is included in the annexation area and the remainder of the property is excluded. Petitioners argue that the City's approach subverts the purpose of the "subdivision test," ignoring the actual subdivision of the land and creating subdivisions that do not exist. Petitioners argue that "the City's method purposely inflates the 'subdivision test' fraction by counting pieces of large tracts as small building lots . . . creat[ing] 'evidence' of urbanization . . . where none really exists." Petitioners assert that if the "subdivision test" ratio is adjusted to account for the acreage being part of the larger tracts, neither Areas 1 or 10 meet the "subdivision test" minimum of sixty percent urbanization. Accordingly, petitioners contend that the judgment of the trial court must be reversed.

The City argues that G.S. 160A-48(c) limits consideration to the area to be annexed. Accordingly, the City argues that "[i]t would be contrary to the language of the statute to treat two (2) acres of land being annexed as if it were twenty (20) acres of land since only the land being annexed may be considered."

Because of our disposition of the first issue on appeal, we need not address this assignment of error. However, we note that this issue was recently addressed in *American Greetings Corp. v. Town of Alexander Mills*, 128 N.C. App. 727, 497 S.E.2d 108 (1998). In *American Greetings*, the Town of Alexander Mills sought to annex 4.29 acres from a 33.53 acre farm. The court determined that the accuracy of the subdivision test must reflect actual urbanization, and substantial compliance required that "there must exist some 'actual, minimum urbanization' of the proposed annexation property." *Id.* at 731, 497 S.E.2d at 110 (citing *Thrash v. City of Asheville*, 327 N.C. 251, 257, 393 S.E.2d 842, 846 (1990)). The court held that the disputed 4.29

acre tract was not sufficiently "urbanized" to satisfy the statutory requirements, because it was not under active development, there was no plat recorded showing subdivision of the lot, and there was no evidence that the owner intended to sell the farm. *Id.* at 731, 497 S.E.2d at 110. Also persuasive to the court's holding was the fact that "the 33.53 acre Toms farm contains two occupied houses surrounded by acres of fields. This is not sufficient to justify a need for annexation of this 4.29 acre tract." *Id.* at 732, 497 S.E.2d at 111. Accordingly, this court did not reject the use of lot splitting in calculating acreage for the "subdivision test." Of greater importance, however, was the level of actual urbanization of the disputed lots. In the instant case, the trial court made no findings as to the actual urbanization of the split lots.

[2] We consider last whether the boundaries of the annexation areas met the standards of G.S. 160A-48(e) where 200 foot setbacks were consistently used. Petitioners argue that the annexation statutes require that the boundary of an annexation area follow natural topographic features or streets wherever practical. G.S. 160A-48(e). Petitioners contend that in the six annexation areas virtually no portion of the boundaries coincide with natural topographic features or streets, but instead the boundaries are parallel to streets with a 200 foot setback. Petitioners argue that it was shown that there were available topographic features or a street boundary that would have been practical to follow. Petitioners note that legislation which allowed the use of setbacks has been repealed and urge that legislative repeal indicates that the practice should be discontinued. Accordingly, petitioners argue that the trial court's judgment should be reversed.

The City argues that the 1985 amendments eliminated only the restriction or limitation on the extent to which a city could use both sides of the street in fixing the annexation boundary. The City contends that "[t]he plain language makes it clear that if there are no topographical features such as streams or ridge lines an annexing municipality may use streets as a boundary but is not required to do so, and thus may use property lines or setbacks from streets or any other reasonable basis." The City argues that the amended statute does not forbid the use of setbacks.

Because of our disposition of the first issue, we need not address this assignment of error. However, to minimize the likelihood of unnecessary litigation, we will discuss its merits. G.S. 160A-48(e) pro-

vides: "[i]n fixing new municipal boundaries, a municipal governing board shall, *wherever practical,* use natural topographic features such as ridge lines and streams and creeks as boundaries, and *may* use streets as boundaries." (Emphasis added). The plain language of the statute does not prohibit the use of 200 foot setbacks. All that is required is that the governing board use natural topographic features wherever practical. "This Court has recognized that in order to establish non-compliance . . . petitioners must show two things: (1) that the boundary of the annexed area does not follow natural topographic features, and (2) that it would have been practical for the boundary to follow such features. *Weeks v. Town of Coats,* 121 N.C. App. 471, 474-75, 466 S.E.2d 83, 85 (1996) (citing *Lowe v. Town of Mebane,* 76 N.C. App. 239, 244, 332 S.E.2d 739, 743 (1985). Here, the trial court found that the City used natural topographic features where it was practical to do so, and accordingly concluded that the City had complied with G.S. 160A-48(e). In *Weeks,* we stated that:

> Review by this Court is limited to the following two inquiries: (1) whether the findings of fact are supported by competent evidence and (2) whether the findings, in turn, support the court's conclusion. Findings of fact, if supported by competent evidence, are binding; conclusions of law, however, are reviewable de novo. Citation omitted.
>
> . . . .
>
> When the record submitted in superior court demonstrates on its face substantial compliance with the annexation statute, "the burden falls on the petitioners to show by competent and substantial evidence that the statutory requirements were in fact not met or that procedural irregularities occurred which materially prejudiced their substantive rights."

*Weeks,* 121 N.C. App. at 473-74, 466 S.E.2d at 84-85 (citations omitted). In *Weeks,* the annexation was declared null and void because the record demonstrated that the Town did not attempt to comply with the statute. That is not the situation here. Here, the City's Planning Director, Michael Pearce, testified that the City first examined the area for natural topographic features, and in the absence of those features the City then used the setbacks. There was sufficient evidence to support the trial court's finding of fact that the City used natural topographic features wherever practical. Accordingly, the findings supported the trial court's conclusion of law that the City substantially complied with the provisions of G.S. 160A-48(e).

In sum, because there was not a sufficient metes and bounds description of the area sought to be annexed in the annexation ordinance, we reverse and remand the matter to the trial court for entry of judgment that none of these areas proposed to be annexed qualify to be annexed and that these annexation ordinances are void.

Reversed and remanded.

Judges JOHN and TIMMONS-GOODSON concur.